## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**POLLY R. GRANGER and THOMAS E. GRANGER,**

      **Plaintiffs,**

**v.**                                                    **Case No:  6:12-cv-223-Orl-31DAB**

**KELLY C. WILLIAMS, JENNIFER SHAFFER, KEVIN THERIAULT, MICHAEL BROUILLETTE,**

      **Defendants.**

_____

## ORDER

This matter comes before the Court on four motions for summary judgment (Docs. 48-51) filed by Defendants Kelly C. Williams, Jennifer Shaffer, Kevin Theriault, and Michael Brouillette; Plaintiffs' responses thereto (Docs. 57-59); and Defendants' replies (Docs. 62-64).

### I. Background

This §1983 action is based on the allegedly false arrests of Mr. and Mrs. Granger by Defendants Kelly C. Williams, Jennifer Shaffer, and Kevin Theriault, officers of the New Smyrna Beach Police Dept. (collectively, the "Officers"). On November 21, 2010, the Officers got a call that a "minor dispute" had occurred at a local restaurant. When they arrived at around 9:30p.m., they encountered the Plaintiffs and another couple sitting at a table in front of the restaurant. The Officers asked about the reported incident and Plaintiffs replied that an altercation had occurred, but that they were not involved. A heated verbal exchange occurred after Polly Granger asked Officer Williams "are you having a baby?" followed by, "I thought her belly looked like she might

be pregnant . . . sorry." The two women exchanged words, until a manager at the restaurant told the Officers that Plaintiffs might have been involved in the fight.[1] Shortly thereafter, Plaintiffs were arrested.

At the time of her arrest Polly Granger worked as a nurse in the maternity department of Halifax Hospital. While being booked, Officer Shaffer claims that Granger told her there would be "issues" if Officer Shaffer became pregnant and went to Halifax Hospital for treatment. (Doc. 48-9, ¶ 16). Officer Shaffer perceived the comment as a threat and informed her superior, Lieutenant Michael Brouillette. Lieutenant Brouillette, in turn, contacted Granger's superiors at the hospital. A short time later, Polly Granger was fired from Halifax Hospital.

Plaintiffs filed this lawsuit on February 10, 2012, asserting fourteen counts against the four Officers. Counts I through IX are variations of a § 1983 false arrest claim.[2] The remaining claims are for defamation, false arrest, and intentional infliction of emotional distress.

## II.    Standard

### A. Summary Judgment

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact

---

[1] The parties appear to agree on the substance of this conversation because they both rely on the same transcript made from a video of the event. (Doc. 58-2). The video itself is not in evidence.

[2] A single count for false arrest might have sufficed in this case. Instead, the Complaint asserts a different claim for each officer as well as claims under the First and Fourteenth Amendments.

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

### B.  Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Qualified immunity is an immunity

from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial.  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).  Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts.  *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate.  *Id.*  The Supreme Court has established a two-part test to determine whether qualified immunity should apply.  The court must determine whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002).  This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  *Gonzalez*, 325 F.3d at 1234.  The second prong of the test requires the court to determine whether the right was "clearly established."  *Id.*  Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

A warrantless arrest without probable cause violates the Constitution and provides a basis

for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an

absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27

(11th Cir. 2009).   In addition, qualified immunity protects officers who reasonably but mistakenly

conclude that probable cause is present.   *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir.

2009).   Whether a particular set of facts gives rise to probable cause or arguable cause for arrest

depends on the elements of the crime.   *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir.

2004).   Where the facts are undisputed, whether probable cause existed is a question of law.   *Marx

v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

## III.    Discussion

Defendants have established—and Plaintiffs do not appear to dispute—that they were

acting within their discretionary authority. Thus, to overcome qualified immunity on their false

arrest claims Plaintiffs must show the Officers' lacked probable cause for the arrest. Florida

Statutes Section 856.011(1) provides that,

> [n]o person in the state shall be intoxicated and endanger the safety of another
> person or property, and no person in the state shall be intoxicated or drink any
> alcoholic beverage in a public place or in or upon any public conveyance and cause
> a public disturbance.

Defendants also argue that Plaintiffs' arrest was proper under Florida's similar disorderly conduct

and breach of the peace statutes. Fla. Stat. Ann. §§ 509.143[3] and 877.03.[4] Accordingly, this case

---

[3] "A law enforcement officer may arrest, either on or off the premises of the licensed establishment and without a warrant, any person the officer has probable cause to believe violated s. 877.03 on the premises of a licensed establishment and, in the course of such violation, created a threat to the life or safety of the person or others." Fla. Stat. Ann. § 509.143 (West).

[4] "Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or

turns on whether Officers had arguable probable cause to believe Plaintiffs were intoxicated and either (1) a danger to persons or property, or (2) causing a public disturbance.[5]

In this case there is sufficient evidence, viewed in the appropriate light, to support Plaintiffs' arrest. Defendants were dispatched to the scene of a reported fight. When they arrived, Officers encountered the Plaintiffs and two other individuals visibly intoxicated, and sitting outside a restaurant near a broken beer mug—one of whom (Polly Granger) had a cut on her finger.[6] For nearly ten minutes Officers attempted to disperse the group, until a restaurant manager implicated Plaintiffs in the fight. Officers had sufficient information to arrest Plaintiffs on these facts. *C.f.*, *State v. Presley*, 458 So. 2d 847, 848 (Fla. 5th DCA 1984)("Calling a big guy in a bar an asshole or an Iranian, being kicked out of the bar and standing in the roadway yelling is sufficient evidence to give an officer substantial reason to believe the person is creating a public disturbance."). *But see*, *Papalas v. State*, 645 So. 2d 153, 155 (Fla. 1st DCA 1994)("weaving and stumbling in and out of a public roadway used by motor vehicles," was not endangering anyone or causing a public disturbance at the time of her arrest.). Plaintiffs' emphatic response, though replete with **bold emphasis**, is nevertheless unpersuasive. *United States v. Snider*, 976 F.2d 1249, 1251 (9th Cir. 1992) ("While we realize counsel had only our welfare in mind in engaging in these

---

engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083." Fla. Stat. Ann. § 877.03 (West).

[5] To be precise, Sections 509.143 and 877.03 do not require that a suspect be intoxicated. Only that he or she create a public disturbance or engage in fighting.

[6] Plaintiffs both admit to drinking in the two hours prior to the incident—five or six beers for Thomas and three or four margaritas for Polly. (Doc. 50-1, 25:14-19 and 26:3-7) (Doc. 50-2, 28:3-13).

creative practices, we assure them that we would have paid no less attention to their briefs had they been more conventionally written.").

Plaintiffs' theory appears to be that Officer Williams provoked the disturbance. Indeed, it is clear from the transcript that the Officers' demeanor changed after Polly Granger's ill-advised 'pregnancy' comment. This is inconsequential however, since Officers had arguable probable cause to arrest Plaintiffs for being involved in an altercation. *C.f., Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) ("the constitutional reasonableness of a police investigation does not depend on an officer's subjective intent or ulterior motive in conducting the investigation." (citing *Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996))). Defendants are therefore entitled to qualified immunity on the federal claims.[7]

Having dismissed the federal claims, the Court declines to exercise pendent jurisdiction over the remaining state law claims. 28 U.S.C. 1367 (c)(3). It is therefore,

---

[7] Plaintiffs' First Amendment claims fail because Officers had arguable probable cause for arrest, *Redd v. City of Enter.*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested."), as does Plaintiffs' claim under the Fourteenth Amendment. *Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008) ("If an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment-not the more generalized notion of substantive due process under the Fourteenth Amendment-is the guide for analyzing the claim." (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989))).

**ORDERED** that Defendants Motions (Docs. 48-51) are **GRANTED in PART**. Summary judgment is **GRANTED** in favor of Defendants on Counts 1, 2, 3, 4, 5, 6, 7, 8, and 9. The Court declines to exercise pendent jurisdiction over the remaining claims, which are accordingly **DISMISSED without prejudice.**

**DONE** and **ORDERED** in Orlando, Florida on August 19, 2013.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Parties